**UNITED STATES EQUAL EMPLOY-MENT OPPORTUNITY COM-MISSION, Plaintiff,**

**v.**

**CLAYTON RESIDENTIAL HOME, INC.; d/b/a Clayton Home, Defendant.**

No. 93 C 5549.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 1, 1995.

Dana Richard Hutter, John C. Hendrickson, Pamela Sue Moore–Gibbs, E.E.O.C., Chicago, IL, for plaintiff.

Gary Alan Weintraub, Gary A. Weintraub, P.C., Chicago, IL, for defendant.

### *OPINION AND ORDER*

NORGLE, District Judge:

Before the court is Plaintiff's motion to amend the complaint and Defendant's motion for summary judgment. For the following reasons, Plaintiff's motion is granted. Defendant's motion is granted in part and denied in part.

### *FACTS* [1]

Plaintiff, the United States Equal Employment Opportunity Commission ("E.E.O.C."), brought this action against Defendant, Clayton Residential Home, Inc. ("Clayton"), alleging that Denise Ware ("Ware") and a class of female employees were sexually harassed and subjected to a hostile and offensive working environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) ("Title VII").[2] The complaint al-

---

1. The facts are drawn from the complaint, proposed amended complaint and the parties' Local Rule 12(M) and 12(N) statements. In deciding the motion for summary judgment, the court has relied on only those facts which have been properly supported by affidavits, depositions, answers to interrogatories, etc., filed with the 12(M) and 12(N) statements.

2. The complaint also asserted claims under Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981. The court dismissed these claims because that section does not apply retroactively. *Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

leges that Ware was constructively discharged and requests that the court award back pay for her and all other female employees and that the court issue a permanent injunction enjoining Clayton from engaging in any employment practices which discriminate on the basis of sex.

Clayton employed Clarence Golden ("Golden") as an Activity Director starting in November 1989. He has not worked at Clayton since April 26, 1991.[3] During this period, Golden had authority to hire, discipline, and evaluate employees. He also could recommend their termination. Ware began working under his supervision as an Activity Aide on March 12, 1990. During the course of her employment, Golden grabbed her breast and buttocks on two occasions. He also made vulgar comments to her on other occasions. She complained about this behavior to Robert Baily ("Baily"), the Administrator, and to Georgie Magit ("Magit"), the Assistant Administrator. Magit stated that she would talk to Golden, but Golden did not discontinue his behavior. Ware resigned on January 3, 1991. Ware has been reinstated at Clayton, settled all back pay issues, accepted settlement funds, and released all back pay claims.

Sherry Rowland began working at Clayton as an Activity Aide on June 22, 1989. Golden was her direct supervisor from November 1989, until she left on March 30, 1990. During the course of her employment, she alleges that Golden regularly and frequently made vulgar remarks to her. These remarks were of a sexual nature, and she viewed them as hostile and offensive. On one occasion, Golden stroked her leg, and on several occasions she saw him pinch women on the buttocks. In addition to Golden, Rowland saw Baily fondle a women's breast at a Clayton Christmas party. When she confronted Baily, he told her to leave the party. Rowland resigned from Clayton on March 30, 1990 and was unemployed until June 25, 1990.

## II. DISCUSSION

### A. MOTION TO AMEND

■ The E.E.O.C. seeks to amend its complaint to clarify that in addition to Ware,

Sherry Rowland ("Rowland") was constructively discharged on the basis of her sex and that acts of sexual harassment occurred up until April 26, 1991, as opposed to January 3, 1991.

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading should be "freely given when justice so requires." Fed.R.Civ.P. 15(a). "[I]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment," amendment should be allowed. *King v. Cooke*, 26 F.3d 720, 723 (7th Cir.1994) (quoting *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

None of the concerns discussed in *King* are apparent in this case. Allowing amendment to the complaint will not require that discovery be reopened or that the trial be delayed. Clayton has not demonstrated that there is any bad faith or dilatory motive behind the E.E.O.C.'s request to amend, nor that any undue prejudice to itself will result. The E.E.O.C.'s original complaint alleged that a class of women had been sexually harassed. The E.E.O.C. contends that Rowland is one of these women. The proposed amendment merely serves to clarify the allegations. The amendment extending the date of the acts alleged to April 26, 1991, merely serves to encompass all the time in which Golden was employed at Clayton.

Clayton has taken Rowland's deposition. Clayton's motion for summary judgment refers to several documents which it contends show that Rowland was not constructively discharged. Clayton also refers to these documents in its pretrial order as potential exhibits to attack her testimony. Thus, it is quite clear that Clayton is prepared to meet Rowland's allegations. Consequently, it is not prejudiced by the amendment, nor has it

---

**3.** Golden worked for Clayton on two prior occasions: November 19, 1985, through October 25, 1988; and December 14, 1988, through January 4, 1989.

shown that it is prejudiced by extending the final date of the acts alleged until April 26, 1991. Therefore, the amendments will be allowed. Accordingly, the motion to amend the complaint is granted.

### B. *MOTION FOR SUMMARY JUDGMENT*

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that for a party to prevail on a summary judgment motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1440 (7th Cir.1992), a scintilla of evidence in support of the nonmovant's position will not suffice to oppose a motion for summary judgment. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). Instead, the nonmoving party must elucidate specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Moreover, to preclude summary judgment the disputed facts must be those that might affect the outcome of the suit, *First Indiana Bank v. Baker,* 957 F.2d 506, 508 (7th Cir. 1992), and a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings with affidavits, depositions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial. *Bank*

*Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

### 1. *Injunctive Relief*

■ The court has discretion to order injunctive relief in Title VII cases if it finds that an injunction is necessary to make the victims of discrimination whole or that discrimination could persist without an injunction. *E.E.O.C. v. Gurnee Inn Corp.,* 914 F.2d 815, 817 (7th Cir.1990). "A determination of whether injunctive relief is appropriate hinges on a balance of the various equities between the parties and the result must be consistent with the purposes of Title VII and the 'fundamental concepts of fairness.'" *Kamberos v. GTE Automatic Elec., Inc.,* 603 F.2d 598, 603 (7th Cir.1978) (quoting *Williams v. General Foods Corp.,* 492 F.2d 399 (7th Cir.1974)).

■ The E.E.O.C. may be entitled to injunctive relief in cases where it proves that the defendant discriminated against an employee and the employer fails to show that violations are not likely recur. *E.E.O.C. v. Harris Chernin, Inc.,* 10 F.3d 1286, 1292 (7th Cir.1993); *see also Ragsdale v. Turnock,* 841 F.2d 1358, 1366 (7th Cir.1988) (courts do not usually enjoin conduct which has discontinued and shows no real prospect it will be repeated). Assuming that all of the E.E.O.C.'s factual assertions are true and would be proved at trial, nevertheless, it would not be entitled to injunctive relief in this case.

The date of the last alleged unlawful employment practice is April 26, 1991, three and three-quarters years ago. During most of that time, no other allegation of employment discrimination had been made against Clayton. However, on April 7, 1994, almost three years since the last alleged unlawful act occurred, a terminated probationary employee filed a discrimination charge with the E.E.O.C. against Clayton. This charge is pending before the E.E.O.C. without any determination as to its merits,[4] and the court

---

4. Clayton contends that this employee was terminated during her probationary period after being tardy on eighteen occasions and absent two days during the two and one-half months she was employed.

will not presume that it is meritorious merely as a result of its filing.

Golden has not worked at Clayton since April 26, 1991. Baily and Magit, Golden's supervisors, no longer work for Clayton. Clayton has an anti-discrimination policy. A permanent injunction may require the continuing supervision of the court, which is costly. *Walgreen Co. v. Sara Creek Property Co., B.V.*, 966 F.2d 273, 276 (7th Cir.1992) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 391–92 (7th Cir.1984)). "The clear purpose of Title VII is to bring an end to the proscribed discriminatory practices and to make whole, in a pecuniary fashion those who have suffered by it." *Williams v. General Foods Corp.*, 492 F.2d at 407 (quoting *Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711, 720 (7th Cir.1969)). "Where, however, the proscribed discriminatory practice has been terminated and there is little likelihood of recurrence, it would not be an abuse of discretion for a lower court to deny injunctive relief." *Id.* Clayton has shown by the dearth of complaints against it in the last four years that there is little likelihood of recurrent violations. Thus, the purpose of Title VII will not be advanced further by enjoining Clayton from doing what it is already not doing, engaging in unlawful employment practices. Burdening the court, Clayton and the E.E.O.C. with the costs incumbent in a permanent injunction is not justified. Accordingly, Clayton's motion for summary judgment is granted as to the E.E.O.C.'s claim for injunctive relief.

### 2. *Monetary Relief*

■ Clayton contends that no monetary issues remain before the court. Ware has been reinstated by Clayton, settled all back pay issues, accepted settlement funds, and released all claims for back pay. The E.E.O.C. does not contest these facts. However, it contends, and the court agrees, that genuine issues of fact remain as to whether Rowland was subject to unlawful employment practices, and whether she is entitled to back pay.

Rowland has asserted in a sworn affidavit that she was subjected to unwelcome verbal and physical sexual advances during the course of her employment. She asserts that this created an offensive work environment which caused her to be constructively discharged. Clayton asserts that she was not constructively discharged because on her letter of resignation and on several employment applications Rowland indicated that she was leaving Clayton "voluntarily" to pursue better or different employment opportunities. Rowland rejoins that she did so only to insure that she obtained a good recommendation from Clayton.

Rowland's explanation for why she was not candid in her letter of resignation and employment applications is arguably plausible. Furthermore, none of those documents are sworn statements as is her affidavit. The statement in her deposition that she "voluntarily resigned," (Rowland Dep. at 27), from Clayton is not determinative of whether she was constructively discharged. Rowland is not an attorney, and her statement that she left "voluntarily" does not carry with it the legal conclusion that she was not constructively discharged. To her, this statement might merely indicate that she was not literally fired. Whether she was constructively discharged is a genuine issue of material fact yet to be determined at trial[5] and summary judgment is not appropriate. Consequently, whether Rowland is entitled to back pay also remains to be determined. Accordingly, Clayton's motion for summary judgment on the E.E.O.C.'s claim for monetary relief is denied.

### CONCLUSION

For the reasons stated above, the E.E.O.C.'s motion to amend the complaint is granted. Clayton's motion for summary

---

5. Subsumed within that issue are the following sub-issues: whether Rowland was subjected to offensive conduct of a sexual nature; whether the conduct was so severe and pervasive as to constitute a hostile working environment; whether a reasonable person would find the environment hostile; whether Rowland perceived the environment as hostile; and whether a reasonable person in Rowland's position would have been compelled to resign because of the hostile environment. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1553–57 (7th Cir.1994); *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1005 (7th Cir.1994).

judgment is granted as to the claim for injunctive relief and denied as to the claim for monetary relief.

IT IS SO ORDERED.